UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NEIGHBORS CREDIT UNION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21 CV 1477 RWS |
| | ) | |
| INTEGON NATIONAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This case arises out of a dispute between Plaintiff Neighbors Credit Union ("Neighbors") and Defendant Integon National Insurance Company ("Integon") regarding the scope of coverage under an insurance policy.  The case is before me on the parties' cross-motions for summary judgment.  For the reasons discussed below, Neighbors' motion will be denied, and Integon's motion will be granted.

## BACKGROUND[1]

From June 2020 to August 2021, Neighbors was the sole owner of real property located in St. Louis, Missouri, at 511 Withers Avenue (the "Property"). (Doc. 23, Pl.'s Statement of Uncontroverted Material Facts ("SUMF"), ¶ 1; Doc. 29,

---

[1] The information in this section is taken primarily from the parties' statements of uncontroverted material facts, (Docs. 23 & 29), to the extent the facts are supported by admissible evidence and are not specifically controverted by the opposing party as required by Local Rule 7–4.01(E).

Def.'s SUMF, ¶ 1).  The Property included a large single-story masonry building (the "Warehouse").  (Pl.'s SUMF at ¶ 2; Def.'s SUMF at ¶¶ 2 & 29).  At some point, Neighbors obtained insurance coverage for the Property through a mortgage security policy issued by Integon (the "Policy").  (Pl.'s SUMF at ¶ 3; Def.'s SUMF at ¶ 3). The Policy provided for more than $2 million of commercial liability coverage, subject to certain terms and conditions, and the period of coverage under the Policy included all times relevant to this case.  (Pl.'s SUMF at ¶¶ 4–5).

The Policy contained the following provisions:

GENERAL PROVISIONS

…

> 2.     Commercial – Buildings used for multi-family housing purposes for 5 or more families, and all other occupancies.

…

C.     Coverage Provided: This Policy insures against direct physical loss or damage to insured property.  … All coverages, terms and conditions for commercial property are set forth in this Mortgage Security Policy and the attached General Property Amended Form.

…

P.     Loss Settlement: Covered Property Losses are settled as follows:

…

> 2.     Commercial

> a)    All property except Tenant's Improvements and Betterments at actual cash value except as provided below or by endorsement.

(Doc. 29-1, Def.'s Ex. A, pp. 8–9).

The Policy also included a "General Property Amended Form," which applied to commercial property pursuant to paragraph C of the General Provisions.  (Id. at p. 8).  The General Property Amended Form contained the following provisions:

## SECTION I – PROPERTY COVERED

The insurance under this Policy covers "Building(s)" in accordance with the following description(s) of coverage.  … Building(s) or structure(s) shall include … fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building ….

…

## SECTION III – PERILS INSURED AGAINST

This Policy insures against all direct loss caused by:

…

8.    Vandalism, meaning willful and malicious damage to, or destruction of, the described property.
We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

(Id. at pp. 19–21).

In December 2020 and January 2021, individuals broke into the Warehouse on several occasions and stole copper and other valuable materials.  (Pl.'s SUMF at

3

¶ 14; Def.'s SUMF at ¶¶ 5, 13–14, 23).  The individuals caused extensive damage in the process, particularly to the Warehouse's heating, ventilation, and air conditioning equipment (the "HVAC equipment"), which included ten "Liebert units" and three "dry coolers."  (Pl.'s SUMF at ¶¶ 14, 22, 24, 26, 28–29, 38, 43–44; Def.'s SUMF at ¶¶ 5, 13–14, 23, 36, 45).[2]  The HVAC equipment contained a large amount of copper, which was stolen by the individuals who broke into the Warehouse.  (Pl.'s SUMF at ¶¶ 25, 30–31, 40–42; Def.'s SUMF at ¶¶ 5, 13–14, 38, 41).  The individuals gained access to the materials inside of the HVAC equipment by opening and/or removing panels.  (Def.'s SUMF at ¶¶ 35, 40, 42).

Shortly thereafter, Neighbors submitted four notices of property loss.  (Id. at ¶¶ 11, 18, 21, 24).  In its first notice, Neighbors described the damage as "[s]tolen copper from the Liebert HVAC systems and removal of copper pipes of the sprinkler system."  (Doc. 29-7, Def.'s Ex. G).  In its second notice, Neighbors described the damage as "[s]tolen copper, stole refrigerator, cut copper caused specialized coolant to be sprayed in the datacenter area, additional damage report information still coming."  (Doc. 29-10, Def.'s Ex. J).  In its third notice, Neighbors described the damage as "[b]roke LED lights in warehouse, more stolen copper, additional damage to HVAC system."  (Doc. 29-12, Def.'s Ex. L).  In its final notice, Neighbors

---

[2] The individuals also caused damage to the Warehouse's sprinkler system, electrical systems, and bathrooms, among other things.  (Pl.'s SUMF at ¶ 14).

described the damage as "[s]tolen copper, stole refrigerator, cut copper caused specialized coolant to be sprayed in the datacenter area, electrical box pried open, thieves took down a whole rail siding door to break in." (Doc. 29-13, Def.'s Ex. M).

In August 2021, Neighbors was advised through three letters that the majority of the claimed damage was not covered under the Policy. (Pl.'s SUMF at ¶ 50). The letters denied coverage for all claimed damage to the Property except for damage to the Warehouse's "steel door and plywood" for which Neighbors received a check for $317.21. (Id. at ¶ 51). In denying coverage for the majority of the claimed damage, the letters cited the provision in section III of the General Property Amended Form, which stated: "We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars" (the "theft provision"). (Id. at ¶ 53).

Neighbors subsequently refused to cash the check for $317.21 and filed this lawsuit against Integon, seeking to recover payments under the Policy. (Id. at ¶ 54). In this lawsuit, Neighbors alleges that Integon improperly denied coverage for damage to, among other things, the Warehouse's HVAC equipment. (Doc. 4, Am. Compl., pp. 3, 5–10). Neighbors asserts two claims against Integon: (Count I) a claim for breach of contract; and (Count II) a claim for vexatious refusal. (Id. at pp. 5–10). The parties have filed cross-motions for summary judgment.

Neighbors contends that it is entitled to summary judgment on the issue of whether the Policy covered the damage to the HVAC equipment.  Neighbors argues that the Policy covered such damage because (1) the HVAC equipment was a part of the covered "building," as defined in section I of the General Property Amended Form; (2) the damage to the HVAC equipment was "vandalism," as defined in section III of the General Property Amended Form; and (3) the damage to the HVAC equipment was "building damage caused by the breaking in or exiting of burglars."

Integon contends that it is entitled to summary judgment for three independent reasons: (1) the claimed damage to the HVAC equipment was "caused by or resulted from theft;" (2) Neighbors is not entitled to recover the cost of replacing the damaged HVAC equipment and has not presented any evidence or disclosed any experts to testify as to the actual cash value of the HVAC equipment at the time of loss; and (3) Neighbors cannot recover for vexatious refusal because Integon had reasonable cause to believe that there was no liability for the damage to the HVAC equipment.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, I must "'view the evidence in the light most favorable to the opposing party' and draw all reasonable inferences in favor of that party."  Cox v. First Nat. Bank, 792 F.3d 936, 938 (8th Cir. 2015) (quoting Tolan

v. Cotton, 572 U.S. 650, 657 (2014)).   The movant bears the initial burden of informing me of the basis of its motion and identifying the portions of the record it believes show the absence of a genuine issue of material fact.   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Upon a properly supported motion, the opposing party must "respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'"   Togerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting Celotex, 477 U.S. at 324).

## DISCUSSION

The threshold issue in this case is whether the Policy covered the damage to the HVAC equipment.   After carefully reviewing the Policy, I find that the damage to the HVAC equipment was not covered.   Because the damage to the HVAC equipment was not covered under the Policy, Integon is entitled to summary judgment on both counts of Neighbors' amended complaint.

## A.     The damage to the HVAC equipment was not covered under the Policy.

State law governs the interpretation of the Policy because federal jurisdiction in this case is based on diversity of citizenship.   See Midwest Reg'l Allergy v. Cincinnati Ins. Co., 795 F.3d 853, 856 (8th Cir. 2015).   The parties do not dispute that Missouri law controls.   Under Missouri law, the interpretation of an insurance policy is a question of law.   Allen v. Continental W. Ins. Co., 436 S.W.3d 548, 553 (Mo. banc 2014).   "'The insured bears the burden of proving coverage,'" and "the

insurer bears the burden of proving the applicability of any exclusion from coverage." Midwest Reg'l Allergy, 795 F.3d at 856 (quoting Fischer v. First Am. Title Ins. Co., 388 S.W.3d 181, 187 (Mo. Ct. App. 2012)).

When construing an insurance policy under Missouri law, a court must apply the meaning that "would be attached by an ordinary person of average understanding if purchasing insurance." Allen, 436 S.W.3d at 553–54. A court should apply the general rules of contract interpretation. Todd v. Missouri United Sch. Ins. Council, 223 S.W.3d 156, 160 (Mo. banc. 2007). A policy should be "construed as a whole so as to not render any terms meaningless, and a construction that gives a reasonable meaning to each phrase and clause and harmonizes all provisions is preferred over a construction that leaves some of the provisions without function or sense." State ex rel. Riverside Pipeline Co., L.P. v. Public Serv. Com'n of State, 215 S.W.3d 76, 84 (Mo. banc 2007).

If an insurance policy is unambiguous, it must be enforced as written. Allen, 436 S.W.3d at 554. If a policy is ambiguous, however, a court must resolve the ambiguity against the insurer-drafter. Id. "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy" or if the policy language is "reasonably open to different constructions." Burns v. Smith, 303 S.W.3d 505, 509 (Mo. banc 2010) (internal quotation marks omitted). The question of whether an insurance policy is ambiguous is a question of law.

Todd, 223 S.W.3d at 160.  But a court should not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists."  Allen, 436 S.W.3d at 554 (internal quotation marks omitted).

The provisions of the Policy that are relevant to the issue of coverage in this case are found in sections I and III of the General Property Amended Form:

### SECTION I – PROPERTY COVERED

The insurance under this Policy covers "Building(s)" in accordance with the following description(s) of coverage. … Building(s) or structure(s) shall include … fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building ….

…

### SECTION III – PERILS INSURED AGAINST

This Policy insures against all direct loss caused by:

…

8.      Vandalism, meaning willful and malicious damage to, or destruction of, the described property.
We will not pay for loss or damage caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars.

(Def.'s Ex. A at pp. 19–21).  These provisions apply to the Property because it was commercial property under the Policy.  (Id. at p. 8 (defining commercial property as "[b]uildings used for multi-family housing purposes for 5 or more families, and all other occupancies"); id. ("All coverages, terms and conditions for commercial

property are as set forth in this Mortgage Security Policy and the attached General Property Amended Form.")).

Under the relevant provisions, the damage to the HVAC equipment was covered if: (1) the HVAC equipment was a part of the covered "building," as defined in section I of the General Property Amended Form; (2) the damage to the HVAC equipment was "vandalism," as defined in section III of the General Property Amended Form; and (3) the damage to the HVAC equipment was not excluded from coverage under the theft provision.  Having reviewed the Policy and, specifically, the theft provision, I find that the damage to the HVAC equipment was unambiguously excluded from coverage because it was caused by or resulted from theft and was not "building damage caused by the breaking in or exiting of burglars."

1.    The HVAC equipment was a part of the covered "building."

The first question with respect to the issue of coverage in this case is whether the HVAC equipment was a part of the covered "building," as defined in section I of the General Property Amended Form.  Section I of the General Property Amended Form defined the covered "building" as including "fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building." (Id. at p. 19).  It is undisputed that the HVAC equipment, which operated to provide climate control for the Warehouse, constituted "fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the

10

building."  (Pl.'s SUMF at ¶¶ 20, 37, 40).  As a result, the HVAC equipment was a part of the covered "building."

    2.    <u>The damage to the HVAC equipment was "vandalism."</u>

The next question is whether the damage to the HVAC equipment was "vandalism," as defined in section III of the General Property Amended Form. Section III of the General Property Amended Form defined "vandalism" as "willful and malicious damage to, or destruction of, the described property."  (Def.'s Ex. A at p. 21).  Under this broad definition, I find that an ordinary person of average understanding would have understood the Policy's definition of "vandalism" as encompassing the damage to the HVAC equipment because the damage was done willfully and maliciously—in other words, the damage was done deliberately and showed a desire to cause harm.

Integon argues that the damage to the HVAC equipment was not "vandalism" because the individuals who caused the damage did so with the intention and motivation to steal, not to maliciously deface, destroy, or damage.  This argument is unpersuasive for two reasons.  First, the Policy's definition of "vandalism" was not limited to damage done with a particular intention or motivation; the Policy simply defined "vandalism" as "willful and malicious damage to, or destruction of, the described property."  Second, the fact that the theft provision was included within the paragraph providing coverage for vandalism suggests that damage caused by or

11

resulting from theft was a subcategory of vandalism, albeit a subcategory that was not covered.  See SJP Props., Inc. v. Mount Vernon Fire Ins. Co., No. 4:14-CV-694-JAR, 2015 WL 4524337, at *7 (E.D. Mo. July 27, 2015) ("The theft exclusion appears within the paragraph providing coverage for vandalism and was clearly intended as an exclusion or exception to the vandalism coverage.").[3]

### 3. The damage to the HVAC equipment resulted from theft.

The third question is whether the damage to the HVAC equipment was caused by or resulted from theft.  Neighbors appears to concede this point.  See (Doc. 34, Pl.'s Reply Mem. in Supp. of Mot. for Summ. J., p. 2 ("It is undisputed that burglars, in part, stole copper parts from the Liebert units and Dry Coolers.  But that theft cannot negate the express exception to the Policy's theft exclusion."); id. at p. 8 ("The record demonstrates that the burglars' conduct in entering and exiting the HVAC systems was in furtherance of theft.")).  Even in the absence of such a concession, however, I would still find that the damage to the HVAC equipment was caused by or resulted from theft because that is shown by the undisputed evidence. (Def.'s SUMF at ¶¶ 5, 13–14, 23, 31–33, 36, 44–45, 47–48); see also Certain Underwriters at Lloyds, London v. Law, 570 F.3d 574, 579 (5th Cir. 2009) ("Thieves caused the damage in the course of gaining access to the object of their theft, i.e., the

---

[3] Whether the damage to the HVAC equipment was "vandalism" or simply damage caused by or resulting from theft is largely immaterial because the Policy clearly provided coverage for "building damage caused by the breaking in or exiting of burglars," and Neighbors argues that the damage to the HVAC equipment was such damage.

copper tubing components of the air-conditioning units.  But for the thieves' desire to steal the copper tubing, the damage would not have occurred.  The damage therefore falls squarely within the theft exclusion ….").

      4.    <u>The damage to the HVAC equipment was not "building damage caused by the breaking in or exiting of burglars."</u>

The final question is whether the damage to the HVAC equipment was "building damage caused by the breaking in or exiting of burglars."  This question can be broken into two parts: (1) whether the damage to the HVAC equipment was "building damage;" and (2) whether the damage to the HVAC equipment was "caused by the breaking in or exiting of burglars."  The first part of the question has already been answered in the affirmative: the damage to the HVAC equipment was "building damage," as defined in section I of the General Property Amended Form, because "building" was defined as including "fixtures, machinery and equipment constituting a permanent part of and pertaining to the service of the building."

In answering the second part of the question, I find the Fifth Circuit's decision in <u>Certain Underwriters at Lloyds, London v. Law</u>, 570 F.3d 574 (5th Cir. 2009) instructive.  In that case, thieves had climbed onto the roof of the insured's vacant building, tore off the exterior panels of several air-conditioning units, and stole copper condenser coils.  <u>Id.</u> at 575.  The building was insured through a policy, which contained a provision that was identical to the one at issue here: "We will not pay for loss or damage caused by or resulting from theft, except for building damage

13

caused by the breaking in or exiting of burglars." Id. at 576.  As in this case, the insured argued that, because the air-conditioning units were fixtures and therefore a part of the covered building, the thieves' entry into the units was equivalent to "breaking in or exiting" the building.  Id. at 579–80.

The Fifth Circuit rejected the insured's argument and found that the damage to the air-conditioning units was not covered.  In rejecting the insured's argument, the Fifth Circuit provided the following reasoning:

> We certainly do not doubt that the large, self-contained air-conditioning units installed atop the exterior roof of the [insured's] building can be considered fixtures.  Neither do we ignore the policy provision that describes the insured "building" to include fixtures ….  But neither fact convinces us that the phrase "breaking into or exiting" should be given a meaning any broader than its ordinarily understood meaning: entry into the interior space of the building itself.  Entry into a fixture is not automatically congruent with entry into the building; that air conditioners as fixtures are part of the building cannot so radically alter the common understanding of what 'breaking in' to a building entails. We interpret the language of the burglary ingress/egress exception to the theft exclusion to mean that the insurer will only pay for collateral damage caused by the burglars' attempt to gain access to the interior of the building, as commonly understood.

Id. at 580–81.  The Fifth Circuit went on to conclude that: "The phrase 'building damage caused by the breaking in or exiting of burglars' is straightforward and unambiguous, ineluctably requiring breaking through (or attempting to break through) a building's exterior to gain access to its interior for the purpose of committing a theft crime." Id. at 583.

I find the Fifth Circuit's reasoning persuasive and equally applicable to the facts of this case.  Although the HVAC equipment was a part of the covered building, as defined in section I of the General Property Amended Form, an ordinary person of average understanding would not have understood the phrase "building damage caused by the breaking in or exiting of burglars" as encompassing anything beyond the breaking into and exiting of the exterior of the Warehouse.  See Midwest Reg'l Allergy, 795 F.3d at 856 (quoting Five Star Quality Car–MO, L.L.C. v. Lawson, 283 S.W.3d 811, 815 (Mo. Ct. App. 2009)) ("'When a provision of a contract deals with a specific situation, it will prevail over a more general provision if there is ambiguity or inconsistency between them.'"); Allen, 436 S.W.3d at 554 ("The general rule in interpreting insurance contracts is to give the language of the policy its plain meaning.").  As a result, the damage to the HVAC equipment was not covered under the Policy as "building damage caused by the breaking in or exiting of burglars."[4]

## B.   Because the damage to the HVAC equipment was not covered under the Policy, Integon is entitled to summary judgment.

Because the damage to the HVAC equipment was not covered under the Policy as "building damage caused by the breaking in or exiting of burglars," Integon is entitled to summary judgment on both counts of Neighbors' amended complaint.

---

[4] Even if the Policy were interpreted as extending coverage to damage caused by "the breaking in or exiting" of the HVAC equipment, the only damage that would be covered under the Policy would be the damage that was caused by the opening and/or removing of the HVAC equipment's outside panels because it is undisputed that the interiors of the HVAC equipment were accessed through opening and/or removing such panels.  (Def.'s SUMF at ¶¶ 35, 40, 42).

See SJP Props., 2015 WL 4524337, at *9 (finding defendant was entitled to summary judgment on plaintiff's breach-of-contract claim and vexatious-refusal claim because plaintiff's claimed damage was not covered under the insurance policy).[5] Neighbors' motion for partial summary judgment will therefore be denied, and Integon's motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Neighbors Credit Union's motion for partial summary judgment [21] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Integon National Insurance Company's motion for summary judgment [27] is **GRANTED**.  Plaintiff Neighbors Credit Union's amended complaint [4] will be **DISMISSED** with prejudice.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 3rd day of November 2022.

---

[5] To the extent Neighbors seeks to recover payments under the Policy for damage to other fixtures, Integon is entitled to summary judgment because such damage was also not covered under the Policy for the same reasons discussed in this Memorandum and Order.

16